**Paul W. KESSENICH, Petitioner,**

v.

**COMMODITY FUTURES TRADING COMMISSION, Respondent.**

**ROSENTHAL & COMPANY, Petitioner,**

v.

**COMMODITY FUTURES TRADING COMMISSION, Respondent,**

**Paul W. Kessenich, Intervenor.**

**Nos. 81–2137, 81–2138.**

United States Court of Appeals, District of Columbia Circuit.

July 27, 1982.

---

William E. Sumner and Anneke Woodward, Atlanta, Ga., for Paul W. Kessenich, petitioner in No. 81–2137 and intervenor in No. 81–2138.

David R. Merrill and William E. Gressman, Washington, D. C., for respondent.

Before TAMM and WILKEY, Circuit Judges.

Opinion PER CURIAM.

## PER CURIAM:

In these cases transferred from the Fifth Circuit,[1] both parties cross-appeal a reparations award of the Commodity Futures Trading Commission (CFTC). The successful complainant before the CFTC, Paul Kessenich, moves to dismiss Rosenthal & Company's cross-appeal and moves to disqualify Rosenthal's counsel. We grant the motion to dismiss because the better interpretation of the applicable statute is that the time to file the required bond is jurisdictional and Rosenthal filed the bond out of time. Rosenthal's counsel is a former employee of the CFTC and initially processed Kessenich's complaint. Although there is little indication that this counsel has gained an actual advantage from his past official connection with the case, we grant the motion to disqualify in order to protect the integrity of this court and the agency.

## I. BACKGROUND

Under section 14 of the Commodity Exchange Act, 7 U.S.C. § 18 (1976), a person aggrieved in certain transactions dealing with commodity trading is given an exclusive remedy for his injury. He may submit a petition to the CFTC setting forth the relevant facts. The Commission initially determines whether the facts alleged, if true, constitute a violation of the Act and whether the facts show that the complainant was injured as a result of the violation. See id. § 18(a); 17 C.F.R. § 12.21. This screening of complaints has been delegated to the Director of the Commission's Division of Enforcement, who has designated the Reparation Unit to perform the task. Where a cognizable claim is determined to be stated, the Commission forwards a copy of the complaint to the respondent for satisfaction or response. If the complaint is not satisfied, the Commission may institute a formal adjudicatory proceeding before an Administrative Law Judge (ALJ). Following a hearing, the ALJ renders an initial

decision establishing liability and compensation, which may be reviewed by the Commission. A final decision of the Commission may be appealed to the U.S. Court of Appeals for the circuit in which the hearing was held or, if no hearing was held, in any circuit in which the appellee is located. See 7 U.S.C. § 18(g); Rosenthal & Co. v. CFTC, 658 F.2d 278 (5th Cir. 1981).

In accordance with these procedures, Paul Kessenich filed a complaint with the Commission on March 6, 1977. The letter was addressed to Clinton Burr, an attorney in the Division of Enforcement. (He was later designated Chief of Reparations in November 1977.) The complaint alleged unlawful acts in connection with certain unauthorized transactions in commodity options on Kessenich's account with Rosenthal & Company (Rosenthal). When no settlement was reached by the parties, the complaint was forwarded for adjudication.

A hearing was held in Washington on May 25, 1978. A final decision of the CFTC was rendered on March 24, 1981. The Commission awarded Kessenich $980.46 in damages and $10,470.54 for speculative lost profits. On April 1, 1981, the law firm that had represented Rosenthal before the CFTC was replaced by Rosenthal's general counsel. This counsel is the same Clinton Burr who had previously worked at the CFTC.

Rosenthal filed a petition for review of the CFTC's decision in the Fifth Circuit on April 7, 1981. It filed the bond required by statute on May 6, 1981. Kessenich cross-appealed shortly thereafter. Three motions were made before the Fifth Circuit:

(1) Rosenthal moved for transfer to the District of Columbia Circuit because that is the location in which the hearing was held;

(2) Kessenich moved to dismiss in No. 81–2138 for failure to file the bond in a timely manner. The statute requires bond to be filed within 30 days of the Commission's decision, and Rosenthal's bond was filed 43 days after the decision;

---

1. The cases have not been consolidated in this court but are addressed in a single opinion for convenience.

(3) Kessenich moved to disqualify Clinton Burr as Rosenthal's counsel in both cases because he had dealt with the case while at the CFTC.

Apparently the Fifth Circuit consolidated the cases. It then granted the motion to transfer to this circuit without deciding the motions to dismiss and to disqualify. *See Rosenthal & Co. v. CFTC*, 658 F.2d 278 (5th Cir. 1981). These two motions are now before the panel.

## II. MOTION TO DISMISS

■ The motion to dismiss is well taken. The relevant subsection of the Commodities Exchange Act, dealing with judicial review of reparation hearings, states in full:

Any order of the Commission entered hereunder shall be reviewable on petition of any party aggrieved thereby, by the United States Court of Appeals for any circuit in which a hearing was held, or if no hearing was held, any circuit in which the appellee is located, under the procedure provided in section 9 of this title. *Such appeal shall not be effective unless within 30 days from and after the date of the reparation order the appellant also files with the clerk of the court a bond* in double the amount of the reparation awarded against the appellant conditioned upon the payment of the judgment entered by the court, plus interest and costs, including a reasonable attorney's fee for the appellee, if the appellee shall prevail. Such bond shall be in the form of cash, negotiable securities having a market value at least equivalent to the amount of bond prescribed, or the undertaking of a surety company on the approved list of sureties issued by the Treasury Department of the United States. The appellee shall not be liable for costs in said court. If the appellee prevails, he shall be allowed a reasonable attorney's

fee to be taxed and collected as part of his costs.

7 U.S.C. § 18(g) (emphasis added).

Generally the limits placed on the time to seek judicial review are "jurisdictional and unalterable." *Microwave Communications, Inc. v. FCC*, 515 F.2d 385, 389 (D.C.Cir. 1974). Here the plain meaning of the statute is that filing of a bond in a timely manner is a prerequisite to pursuing appeal. In *Saharoff v. Stone*, 638 F.2d 90 (9th Cir. 1980), the Ninth Circuit held that filing of the bond was mandatory:

The plain meaning of § 18 requires a double bond to be filed in order to obtain judicial review. [Petitioner] has identified no legislative history and we have discovered none, which persuades us the filing of the bond was not intended to be a mandatory requirement.

*Id.* at 91–92. The court did not reach the question whether the time for filing was unalterable.[2]

The bond requirement reflects at the least a strong congressional concern for either prompt payment of the reparation award or a guarantee that it will be paid. This concern is manifest in 7 U.S.C. § 18(h), which mandates suspension of trading for any registered trader who fails either to take an appeal or to pay the award within 15 days of the end of the period allowed for compliance with the award. A plain reading of the statute thus indicates that the time to file the bond is significant.

There is one other strong indication that the time for filing a bond is jurisdictional. As the Commission notes in its response to the motion to dismiss, section 18 is patterned after the judicial review portions of the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. § 499g(c). As discussed below, there is little if any doubt that timely filing of the appropriate bond is a jurisdictional prerequisite for judicial review under that statute. It therefore follows that timely filing of the bond should

---

**2.** The Ninth Circuit also held the double bond requirement to be unconstitutional because it bore no rational relationship to the payment of interest on the award and costs of appeal. It

retained the requirement, however, for bond equal to the challenged award plus likely costs and attorney's fees.

also be necessary to seek review under section 18.

Under PACA, judicial review may be sought in the United States District Court, but the review is conditioned with identical language concerning filing of a bond for double the amount of the reparation award within thirty days after the date of the award. The House Report concerning the implementation of the bond requirement for PACA leaves no doubt that timely filing of the bond was intended to be jurisdictional:

> Section 9 [of the bill] amends section 7(c) of the act to make it clear that an appeal from a reparation award of the Secretary shall not be effective as an appeal, and therefore not a matter within the jurisdiction of the district court of the United States in which the petition is filed, unless the required bond is filed with the court within 30 days from and after the date of the Secretary's order.

H.R.Rep.No.1546, 87th Cong., 2d Sess. 7 (1962), *reprinted in* 1962 U.S.Code Cong. & Ad.News 2749, 2754.[3] The bill which was later enacted as the Commodity Futures Trading Commission Act of 1974 (CFTC Act) also provided for review in the district court conditioned upon the timely filing of the bond. *See* H.R.Rep.No.975, 93d Cong., 2d Sess. 7, 121 (1974). The Conference Report accepted an alteration by the Senate to allow a more restricted scope of judicial review to be carried out by the courts of appeals. *See* S.Rep.No.1194, 93d Cong., 2d Sess. 7, 34–35 (1974). The bond requirement was retained. This strongly indicates that Congress also intended that timely filing of the bond in the court of appeals is a jurisdictional requirement under the CFTC Act.

■ Rosenthal counters these indications of congressional intent with a number of arguments. First, it claims that Kessenich has suffered no prejudice from the late filing of the bond. Whether Kessenich has been prejudiced in fact, however, would not affect the jurisdiction of this court. Second, it argues that it was not negligent in failing to file the bond on time. Again, if the requirement is jurisdictional, negligence in meeting the requirement is irrelevant, unless this court has some discretion to expand the time for filing the bond. Rosenthal also asserts that it filed the bond on time because it mailed the bond to the Fifth Circuit thirty days after receiving notice of the award. The statute is explicit: "Unless within 30 days from and after the date of the reparation order the appellant also files . . . ." The thirty days clearly runs from the date of the award and not from notice thereof. It is noteworthy that the petition for review must be filed "within 15 days after notice of such order is given to the offending person." 7 U.S.C. § 9. Congress was able to specify notice as the triggering event when it so desired, and it provided for a shorter response time when this was the case.

Rosenthal also argues that it has met all necessary jurisdictional requirements because it has filed its petition as mandated by Federal Rule of Appellate Procedure 15(a). That rule states in pertinent part: "Review of an order of an administrative agency . . . shall be obtained by filing with the clerk of a court of appeals which is authorized to review such order, within the time prescribed by law, a petition to enjoin, set aside, suspend, modify or otherwise review . . . ." Fed.R.App.P.15(a). This simple argument is defeated by the explicit limits placed on the scope of the rules:

> (b) *Rules Not to Affect Jurisdiction.* These rules shall not be construed to extend or limit the jurisdiction of the courts of appeal as established by law.

Fed.R.App.P.1(b). Rule 15 sets forth the procedures for invoking the jurisdiction

---

**3.** In *Chidsey v. Guerin*, 443 F.2d 584 (6th Cir. 1971), the PACA bond requirement withstood constitutional challenge, but the timing question was not specifically addressed. In *O'Day v. George Arakelian Farms, Inc.*, 536 F.2d 856 (9th Cir. 1976), the Ninth Circuit struck the requirement of a bond of double the award as unconstitutional but retained the requirement for payment of bond equal to the award and a reasonable estimation of attorney's fees and costs.

granted by other provisions. It most certainly does not eliminate any jurisdictional requirements Congress may have created by statute.

■ The CFTC suggests that this court has inherent authority to waive the requirement that bond be timely filed. This notion rests on Fed.R.App.P.4(a)(5), which allows a district court to extend the time for filing a notice of appeal upon a showing of excusable neglect or good cause.[4] This rule does not apply directly to this case because the appeal is taken from an administrative agency rather than the district court. As quoted above, the analogous rule for review of agency proceedings grants no discretion to enlarge the time for filing. *See* Fed.R. App.P.15(a). In fact, rule 26(b) explicitly withholds authority for the court to enlarge the time to file a petition for agency review, unless otherwise authorized by law.

A stronger argument might be fashioned from this court's response to a recent Supreme Court case. In *Zipes v. Trans World Airlines, Inc.,* —— U.S. ——, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Supreme Court held that the requirement that a Title VII plaintiff file a charge with the Equal Employment Opportunity Commission within 90 days of the alleged unlawful practice is not a jurisdictional requirement of review in the district court. Instead, this was found to be more in the nature of a statute of limitations, subject to waiver, estoppel, and equitable tolling. *See id.* at 1132. The Court reasoned that, in light of the unclear legislative history, the goal of preventing state claims could be served just as well by such an interpretation, which would be more consistent with the remedial purposes of a scheme in which laymen often initiate the process. *See id.* at 1134.

Shortly thereafter, in *Gordon v. National Youth Work Alliance,* 675 F.2d 356 (D.C.Cir. 1982), this court expanded that reasoning to

include the time for filing suit in the district court after the EEOC has informed plaintiffs of their right to sue. *See id.* at 359–60. It could be argued that the time to file bond after a reparation award of the CFTC should also be subject to equitable modification.

Such an interpretation, however, ignores important differences between the two statutory schemes involved. First, the Commodities Exchange Act is not a remedial civil rights statute attempting to implement far-reaching social change. It does not envision significant reliance on the efforts of laymen unassisted by counsel. In addition, the language of the two statutes differs markedly. Under Title VII, the government must notify a complainant if it does not intend to file suit and "within ninety days after the giving of such notice a civil action may be brought" by the complainant. 42 U.S.C. § 2000e–5(f)(1) (1976). On the other hand, the language of the Commodities Exchange Act, as amended by the CFTC Act, demonstrates the intention to create a condition: "Such appeal shall not be effective unless . . . ." 7 U.S.C. § 18(g).

Perhaps more important, the legislative history of the CFTC Act reflects a desire to follow PACA, which clearly made filing of a timely bond a jurisdictional prerequisite. Conversely, the filing requirements of Title VII of the Civil Rights Act considered in *Zipes* were modeled after those of the Labor-Management Relations Act, which treats the requirements in a manner similar to a statute of limitations. *See* 102 S.Ct. at 1133 n.11.

■ We conclude that the time for filing a bond must be construed as both jurisdictional and unalterable. This being so, the motion to dismiss in No. 81–2138 is granted.[5]

---

4. "The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a)." Fed. R.App.P. 4(a)(5).

5. Even were the time to file the bond subject to equitable modification, however, Rosenthal has not demonstrated any adequate basis on which to grant enlargement of the time in this case. Apparently, it was content to purchase the bond by mail. The check was issued on April 7, and the bond was purchased on April 15 and

## III. MOTION TO DISQUALIFY ROSENTHAL'S COUNSEL

■ Kessenich has also moved to disqualify Clinton Burr, general counsel of Rosenthal & Company, from acting in this court as attorney for Rosenthal. Although there is little or no indication that Kessenich has been or will be prejudiced by the continuation of Burr as attorney for Rosenthal, we grant the motion in light of the uncertainty surrounding the situation and the effect continued representation may have on public confidence in the CFTC.

Burr was an attorney with the Commodity Futures Trading Commission from 1975 to 1978. He was assigned to the Division of Enforcement from December 1976 until he resigned in May 1978. One of his responsibilities was the review of reparation complaints to ensure that they were complete and stated an appropriate claim. He received Kessenich's letter complaint on March 6, 1977, and apparently forwarded notice of the complaint to Rosenthal. Because the facts were in dispute and the parties did not settle the matter between them, the case was docketed in the Office of Hearings and Appeals on August 1, 1977, past which point Burr had no responsibility for the matter.

Kessenich argues that this participation in the incipient case should disqualify Burr from acting as attorney for Rosenthal in this court.[6] Kessenich relies on a criminal statute, the regulations of the CFTC, and the American Bar Association's Code of Professional Responsibility. The CFTC notes that the criminal statute does not apply to Burr, but that he may have violated an earlier version of the provision. It urges disqualification in order to protect the integrity of the Commission. Burr responds that his participation was merely ministerial and neither created a conflict of interest nor made him privy to confidential information which he could use to the detriment of Kessenich. In fact, Burr claims to have no direct memory of the case.

Kessenich first relies on 18 U.S.C. § 207 (Supp. IV 1980), which makes it a crime for a former government employee to represent any interest but the United States in a matter in which he had "participated personally and substantially" as a government employee. As the CFTC points out, this provision only applies to those who left government employ after July 1, 1979, and therefore does not apply to Burr. See 18 U.S.C. § 207 note (Supp. IV 1980). The older form of the statute does apply, however, and it is not substantially different in relevant part. It states:

> Whoever, having been an officer or employee of the executive branch of the United States Government, of any independent agency of the United States, or the District of Columbia, including a special Government employee, after his employment has ceased, knowingly acts as agent or attorney for anyone other than the United States in connection with any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular

sent to Rosenthal's agent. The agent forwarded it to Rosenthal, who received it on the 30th. Rosenthal then mailed the bond to the Court of Appeals. This is hardly best efforts to comply with the requirements of the statute. Rosenthal apologizes for its "oversight occasioned by a misunderstanding of the statute," but claims it was not negligent or malicious. Yet it is hard to condone this misunderstanding. Rosenthal was represented by counsel, and that counsel has had extensive experience with the Commodity Futures Trading Commission.

6. "[C]uriously, the power of the federal courts to disqualify attorneys in litigation pending before them has long been assumed without discussion, ... and attention has focused on identifying the circumstances in which exercise of the power is appropriate." *Board of Educ. v. Nyquist*, 590 F.2d 1241, 1245–46 (2d Cir. 1979) (citations omitted). *Cf. Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir. 1980) ("A district court is obliged to take measures against unethical conduct occurring in connection with any proceeding before it."); Fed.R.App.P. 46(c) ("A court of appeals may, after reasonable notice and an opportunity to show cause to the contrary, and after a hearing, if requested, take any appropriate disciplinary action against any attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with these rules or any rule of the court.").

matter involving a specific party or parties in which the United States is a party or has a direct and substantial interest and in which he participated personally and substantially as an officer or employee, through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise, while so employed . . . [s]hall be fined not more than $5,000, or imprisoned not more than one year, or both.

18 U.S.C. § 207 (1976).

There is no doubt that Burr was an "employee" of an "independent agency" and he now is attempting to act as an attorney for "anyone other than the United States." The only questions are whether the United States is a party or has a direct and substantial interest[7] and whether Burr had "participated personally and substantially" in the matter as an employee. Our present concern for the integrity of the judicial and administrative process does not require that we determine whether the statute has been violated, and indeed it would be precipitous to do so. It is sufficient to note that there is a real possibility that Burr's representation of Rosenthal may be criminal.

Kessenich also cites a Commission regulation which would prohibit Burr's representation of Rosenthal before the Commission:

(a) *Personal knowledge or consideration of the matter.* No person shall ever appear in a representative capacity before the Commission in a particular matter if such person, or one participating with him in the particular matter, personally considered it or gained nonpublic knowledge of the facts thereof while he was a member or employee of the Commission.

17 C.F.R. § 140.735–10 (1981). Kessenich argues, and the Commission agrees, that

this would disable Burr from representing Rosenthal in this case before the Commission. The regulation is not dispositive, however, because it contains no specific disqualification from appearance before other forums. At the least, it does demonstrate the Commission's concern for the integrity of its staff.

Kessenich also cites the American Bar Association (ABA) Code of Professional Responsibility.[8] Disciplinary Rule (DR) 9–101(B) states:

A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.

There is no doubt about any of the elements of this prohibition except whether Burr had "substantial responsibility" for the reparation complaint when it was initially filed. Ethical Consideration 9–3 also bears on this situation:

After a lawyer leaves judicial office or other public employment, he should not accept employment in connection with any matter in which he had substantial responsibility prior to his leaving, since to accept employment would give the appearance of impropriety even if none exists.

Unlike the Disciplinary Rules, which are mandatory, the Ethical Considerations are "aspirational in character and represent the objectives toward which every member of the profession should strive." *Preamble* to ABA Code of Professional Responsibility.

DR 9–101(B) superseded Canon 36 of the old Canons of Professional Ethics. That canon proscribed employment by a former government employee in connection with any matter which he "has investigated or passed upon while in such office or employ." According to ABA Formal Opinion 342,

---

**7.** The Commission argues that it both is a named party and has a substantial interest in at least the orderly development of the relevant law. It may be correct in that the section was intended to expand the scope of the cases in which disqualification would be required: "[S]ection 207(a) strengthens present law by going beyond claims for money or property to the whole range of matters in which the

Government has an interest." S.Rep.No.2213, 97th Cong., 2d Sess. 12 (1962), *reprinted in* 1962 U.S.Code Cong. & Ad.News 3852, 3861.

**8.** "As the legal profession's own source of ethical standards, the Code carries great weight in a court's examination of an attorney's conduct before it." *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976).

which discusses DR 9–101(B) in detail, the language of Canon 36 was "found wanting" and therefore replaced:

Canon 36, former ABA Canons of Professional Ethics, stated that the former government lawyer should not accept employment in connection with a matter "he has investigated or passed upon" while in government employ. But "passed upon" proved to be too broadly encompassing; for example, it was held under Canon 36 that a lawyer could not accept employment in connection with a land title which he had passed upon in a perfunctory manner, the title having been before him for consideration only because title reports were made in his name as assistant chief title examiner or in the name of the chief title examiner. And if disqualifying a lawyer because of a mere "rubber stamp" approval of the work of another was not bad enough, this committee was confronted with the necessity of either disregarding that language of Canon 36 or holding that a lawyer who was a former governor was disqualified from litigation involving any legislation he had passed upon—perhaps by vetoing, signing, or permitting to become law without signature—as governor. Perhaps an extreme in the interpretation of the language was reached when the government contended in one case that a lawyer was barred under Canon 36 when the lawyer "should have passed," even if he had not passed, upon a particular matter.

ABA Formal Opinion 342 (1975) (footnotes omitted).

The Formal Opinion also explains the meaning of "substantial responsibility":

As used in DR 9–101(B), "substantial responsibility" envisages a much closer and more direct relationship than that of a mere perfunctory approval or disapproval of the matter in question. It contemplates a responsibility requiring the official to become personally involved to an important, material degree, in the investigative or deliberative processes regarding the transactions of facts in question. Thus, being the chief official in some vast office or organization does not ipso facto give that government official or employee the "substantial responsibility" contemplated by the rule in regard to all the minutiae of facts lodged within that office. Yet it is not necessary that the public employee or official shall have personally and in a substantial manner investigated or passed upon the particular matter, for it is sufficient that he had such a heavy responsibility for the matter in question that it is unlikely he did not become personally and substantially involved in the investigative or deliberative processes regarding that matter. With a responsibility so strong and compelling that he probably became involved in the investigative or decisional processes, a lawyer upon leaving the government service should not represent another in regard to that matter. To do so would be akin to switching sides, might jeopardize confidential government information, and gives the appearance of professional impropriety in that accepting subsequent employment regarding that same matter creates a suspicion that the lawyer conducted his governmental work in a way to facilitate his own future employment in that matter.

The facts in this case lie at the outer bounds of the "substantial responsibility" required to invoke the disciplinary rule. Burr claims he did little more than accept the Kessenich complaint for filing, and that he has no specific memory of the case. He asserts that his duties were completely ministerial; he had no discretion in the matter, and he was not privy to any confidential information.

The CFTC characterizes his responsibilities very differently. First, it notes that although written delegation to the Reparation Unit of the Commission's discretion to accept and initially process complaints leading to adjudication was not promulgated until after his term of service, oral delegation had occurred before Kessenich filed his complaint. See 43 Fed.Reg. 20970, 20971 (1978). The Commission also cites precedent for the rule that an ALJ could not dismiss a complaint for failure to state a

claim once the case had been forwarded for adjudication. *See Antoniolli v. Clayton Brokerage Co. of St. Louis, Inc.*, Comm.Fut. L.Rep. (CCH) ¶ 20,546, at 22,249 (CFTC 1978). Thus it is clear that the decision to accept a complaint for adjudication is a decision of the Commission in the exercise of its statutory discretion. *See* 7 U.S.C. § 18(a) (the Commission may forward a complaint to the respondent for answer or satisfaction "if, in the opinion of the Commission, the facts therein contained warrant such action").[9]

In evaluating whether a violation of the Code of Professional Responsibility has occurred and whether this violation warrants disqualification, it is appropriate to consider the specific societal interests at stake. "A court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen counsel." *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976). Formal Opinion 342 lists the purposes of DR 9–101(B):

> The policy considerations underlying DR 9–101(B) have been thought to be the following: the treachery of switching sides; the safeguarding of confidential governmental information from future use against the government; the need to discourage government lawyers from handling particular assignments in such a way as to encourage their own future employment in regard to those particular matters after leaving government service; and the professional benefit derived from avoiding the appearance of evil.

*See also Woods, supra*, at 814 (stating that former government employees are usually disqualified either due to possible conflicts while a government official or due to some improper advantage gained over the adverse party); *Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979).

An examination of each of these factors indicates that the most concrete danger in this case is the appearance of impropriety which may affect the perceived integrity of the agency. There has been no allegation that Burr has "switched sides" or that any initial investigation was not done from a neutral point of view. There is no indication that he has gained confidential information that might be used to the detriment of the government. Further, there is no claim that he improperly carried out his duties at the CFTC with an eye to future employment. In fact, he promptly notified his superiors after accepting employment with Rosenthal and removed himself from consideration of related cases. There is also no concrete evidence that he has gained any information beyond that contained in the official record which would aid him in the prosecution of this appeal.

The final consideration, the appearance of evil, is clearly implicated. This is a case with which Burr dealt as a government official, and he now represents one of the parties. It is not at all difficult to imagine that he may have gained some advantage from his former connection with the case, even though its exact outlines have not been articulated. The issue is raised whether this is sufficient to disqualify Rosenthal's chosen counsel.

Some courts have at times held that the appearance of impropriety is sufficient in itself to disqualify counsel.[10] *See Allied Realty of St. Paul, Inc. v. Exchange Nat'l Bank*, 408 F.2d 1099, 1101–02 (8th Cir.), *cert. denied*, 396 U.S. 823, 90 S.Ct. 64, 24 L.Ed.2d 73 (1969); *United States v. Trafficante*, 328 F.2d 117, 120 (5th Cir. 1964). In a later case, the Fifth Circuit articulated a different standard: "[W]hile Canon 9 does

---

9. The Commission notes that the announcement of formal delegation to the Reparation Unit indicated that over 20% of past complaints were not found to warrant further action. *See* 43 Fed.Reg. at 20971.

10. The ABA's Formal Opinion calls avoiding the appearance of impropriety "[p]erhaps the least helpful of the seven policy considerations," and it notes that it is not an element of DR 9–101(B), even though it is relevant to its interpretation. *See* ABA Formal Opinion 342 at n.17.

imply that there need be no proof of actual wrong doing, we conclude that there must be at least a reasonable possibility that some specifically identifiable impropriety did in fact occur." *Woods, supra,* 537 F.2d at 813. In a footnote, the court further explained its standard:

> We emphasize that an attorney need not be disqualified even where there is a reasonable possibility of improper conduct. As we have seen, a court must also find that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case. Under Canon 9, an attorney should be disqualified only when both of these standards have been satisfied.

*Id.* at 813 n.12.

We agree with the implication that counsel should not be disqualified merely because of a hypothetical possibility that an innocuous violation of the Code might have occurred. The more important consideration, however, is the effect of counsel's conduct on the relevant social interests. In this case there is an appearance of impropriety that has an impact beyond its effect on the immediate parties involved. Public confidence in the CFTC's reparation procedures will be undercut if litigants must fear that the public officials who handle their case may one day oppose them in regard to the same matter. This is true even where there is no apparent advantage for the former official. The enforcement of commodity futures trading laws will suffer if laymen are not candid with the investigating personnel of the agency.

Other public considerations militate in favor of disqualification. First, our concern for the integrity of the process before this court suggests we should be wary of allowing Burr to represent Rosenthal in potential contravention of federal criminal proscriptions. Second, the agency itself strongly urges that DR 9–101(B) has been violated. It has encouraged Burr to remove himself from the case, thus indicating that it feels the possible problems of public perception outweigh any difficulties such disqualification could cause in the recruiting of new personnel. Finally, there is no allegation that Rosenthal cannot retain other qualified counsel. In fact, Rosenthal was represented by a private law firm before the Commission.

We do not intend to intimate that attorney Burr has not acted with integrity and candor. Instead, our decision rests on considerations beyond the immediate case before us. The integrity, both actual and apparent, of the agency's dispute resolution mechanism is essential to the regulatory enforcement scheme created by Congress. Employees of the Commission who exercise its discretion in a particular case should not later represent one of the parties in the same matter before the courts. This is especially true when the employee's function required the complete confidence of each party, even if no actual secrets revealed are identifiable later on. Public confidence in judicial and quasi-judicial proceedings can best be maintained by steering clear of situations which call into question the regularity of the process.[11]

On at least one occasion in the past, this court has disqualified counsel even though there was no indication of present impropriety. In *Yablonski v. United Mine Workers (UMW)*, 448 F.2d 1175 (D.C.Cir.1971) (per curiam), the court disqualified counsel for the UMW in the district court. The counsel had at first represented both the

---

11. For that reason, this court has proscribed such representation by its employees to an even wider extent:

> No one serving as a law clerk or secretary to a member of this Court or employed in any other capacity by this Court shall ... after separating from that position practice as an attorney in connection with any case pending in this Court during his term of service, permit his name to appear on a brief filed in connection with any such case, or engage in any activity as an attorney or advisor in connection with any such case.

D.C.Cir.R.4. *See also* D.C.Cir., *Handbook of Practice and Internal Procedures* 8 (1978) ("No person employed by the Court, after leaving the position, may practice as an attorney in any case pending in the Court during the person's term of service.").

UMW and its officers and then withdrew as counsel for the individual defendants. The court held that it was not inappropriate for the counsel to continue to represent the union after it withdrew as counsel for the individual defendants. *See id.* at 1177. It also found no present evidence of conflict of interest in the counsel's representation of the union officials in other cases which stemmed from the same challenge to the union leadership. Yet the potential for conflict due to these other cases was held sufficient in the context of that case to warrant disqualification, based on the underlying objectives of the federal labor laws and the importance of the particular case. *See id.* at 1177–82. The policy objectives of a federal statutory scheme may necessitate disqualification of a litigant's chosen counsel, even though no present evidence of impropriety exists.

We believe the present case also involves a situation in which counsel should be disqualified even though there is no evidence that Burr abused his public office. The potential detriment to public confidence in the CFTC's dispute resolution mechanism outweighs Rosenthal's interest in retaining its chosen counsel. In addition, the possibility that continued representation may be illegal militates strongly in favor of disqualification in order to maintain the integrity of this court's processes. Therefore we grant the motion to disqualify.[12]

## IV. CONCLUSION

The two motions before us have required different forms of analysis. The motion to dismiss for failure to file bond in a timely manner raises a question of statutory interpretation, leading us to explore the intent of Congress. Relying on legislative history, we conclude that the time to file bond when seeking review of a CFTC reparation hearing is mandatory and jurisdictional. In contrast, the motion to disqualify has necessitated a balancing of competing considerations. Guided by the decisions of other

courts, by the pronouncements of Congress in a relevant statute, and by the ethical code of the legal profession, we conclude that disqualification is appropriate in this case.

The motion to dismiss No. 81–2138 is granted, and the motion to disqualify is granted.

*So ordered.*

---

**12.** We assume that disqualified counsel will take appropriate steps to insulate his successor from both himself and his work product and that he will withdraw his brief already filed with the court.