[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-15302

_____

CFTC No.: 89-R300

CALVIN LEE WORD,

Petitioner,

versus

U.S. COMMODITY FUTURES TRADING COMMISSION,
LOUIE G. STIDHAM, JUNE C. STIDHAM,

Respondents.

_____

Petition for Review from the United States Commodity Futures Trading
Commission

_____

(May 23, 2019)

Before WILSON, JILL PRYOR and TALLMAN,[*] Circuit Judges.

_____

[*]        Honorable Richard C. Tallman, United States Circuit Judge for the Ninth Circuit, sitting
by designation.

TALLMAN, Circuit Judge:

Petitioner Calvin Word seeks review of a 2016 order (the "2016 Order") entered by the United States Commodity Futures Trading Commission (the "CFTC" or the "Commission") denying his motion to set aside a 1992 default judgment order (the "1992 Order") requiring him to pay $17,511.91 in reparations plus interest to June and Louie Stidham (the "Stidhams") for violations of the Commodity Exchange Act, 7 U.S.C. §§ 1, *et seq.* (the "Act"). On October 11, 2016, after Word sought review of the 2016 Order, both Respondents filed a motion to dismiss the petition for lack of jurisdiction [Dkt. No. 14] (the "Motion") because Word failed to post the required appeal bond under 7 U.S.C. § 18(e). We grant their Motion and dismiss Word's petition for want of jurisdiction.

I

This case has a long history. The Stidhams were customers of a failed commodity futures trading merchant. In 1989, the Stidhams filed a reparation complaint with the CFTC against traders Word, Madlyn L. Ferro, Andrew C. Anderson, and their employer, First Commodity Corporation of Boston ("FCCB"). The Stidhams alleged that Word and the other respondents had intentionally and fraudulently misrepresented material facts in soliciting and maintaining an account to trade commodity futures contracts. Ferro answered the reparation complaint and moved to dismiss the Stidhams' claims against her, asserting that their claims were

barred by the two-year statute of limitations set forth in 7 U.S.C. § 18(a) (1988).

After being served with legal process under the Commission's regulations,[1] Word,

Anderson, and FCCB did not respond to the Stidhams' complaint or otherwise

participate in the proceedings.  The Stidhams moved for default against those who

did not appear, including Word.

A CFTC administrative law judge (an "ALJ") then issued the 1992 Order

denying the motion for default against Ferro and granting Ferro's motion to

dismiss because the statute of limitations had run.  But the 1992 Order entered

default against Word and the others, stating that they also might have been able to

assert a successful statute-of-limitations defense, but concluding that they had

waived the defense by not raising it in any answer.  The 1992 Order required

Word, FCCB, and Anderson to pay the Stidhams reparation in the amount of

---

[1]     By regulation, the CFTC was required to serve Word with the Stidhams' complaint by registered or certified mail at the address Word, a registrant with the CFTC, had "previously designated with the Commission . . . for receipt of reparation complaints."  17 C.F.R. § 12.15(a) (1989).  Word was required to update the CFTC on his address for two years after his registration was terminated. *Id*. § 3.30 (1989).  Even assuming Word's registration ended as early as he asserts that it did, he still would have been required to keep the CFTC apprised of his address through at least February 15, 1990, well after the Stidhams filed their reparation complaint.  A regulation provided that "[a]n order of default . . . may be entered in any proceeding, including a reparation proceeding commenced while the registrant is registered or within two years thereafter, for failure to file a required response to any communication sent to the latest . . . address" the registrant had on file with the CFTC. *Id*.  Word concedes that the address he had on file with the CFTC was the address to which the CFTC sent the Stidhams' complaint by certified mail in 1989, and he has not argued that a typo in the street name printed on the envelope caused the envelope to be sent to a different address.  Therefore, even though it is undisputed that the complaint the CFTC forwarded to Word was returned unclaimed and Word never received actual notice of the Stidhams' complaint or the 1992 Order until after the 1992 Order was entered, the CFTC fulfilled its obligations under its own regulations to serve him.

3

$17,511.91, plus 4.58 percent interest compounded annually from April 7, 1986,[2] until the date of payment.  Significantly, Word—unaware that the default had been entered against him—did not appeal the default order to the Commission.

The Stidhams then filed a complaint in the United States District Court for the Northern District of Georgia to enforce the reparations award against Word under 7 U.S.C. § 18(d) (1988).  After significant delay caused by Word's recalcitrance, including avoiding service, filing a bankruptcy petition, and refusing to participate in discovery, the district court struck Word's answer in the litigation and entered default judgment (the "1996 Order") against him as a sanction.  The 1996 Order required Word to pay the Stidhams $37,402.35, which included the original reparation award, and accumulated interest plus costs and attorneys' fees.

In 2011, Word filed a motion to set aside the 1992 Order on grounds of excusable neglect.  An ALJ denied that motion under 17 C.F.R. § 12.23(b), which requires motions to set aside default orders in CFTC reparation cases for excusable neglect to be filed within one year of the issuance of the order.  On appeal, the Commission affirmed the ALJ's decision (the "2012 Order"), declining to waive the one-year filing deadline because doing so would prejudice the Stidhams, who had already spent 23 years trying to collect the money they lost.  *See* 17 C.F.R. § 12.4(b).  Word did not seek judicial review of that 2012 Order.

---

[2]    The Stidhams closed their account with FCCB on this date.

4

In 2015, Word filed a second motion to set aside the 1992 Order and dismiss the Stidhams' reparation complaint. In his latest motion, Word contended that the Stidhams' failure to file their reparation complaint within the two-year statutory time limit set forth in 7 U.S.C. § 18(a) deprived the CFTC of jurisdiction to consider the complaint and rendered the reparation award against him void. In response to Word's motion, the Stidhams challenged Word's assertion that the two-year statute of limitations was jurisdictional.

On July 29, 2016, the Commission issued the 2016 Order denying Word's second motion to set aside the 1992 Order, holding that the two-year statute of limitations in § 18(a)(1) was not jurisdictional, and, thus, the Commission had the power to enter the 1992 Order against Word. The Commission held that because Word had no jurisdictional challenge to the default order, he was once again barred from moving to vacate the order by the one-year time limit in 17 C.F.R. § 12.23(b). The Commission further held that, even if Word's motion to vacate was properly before the Commission, it would have denied the motion because he had waived the statute of limitations defense by failing to raise it in any answer to the Stidhams' original complaint. The Commission noted that Word could petition for review of its reparation order to a United States Court of Appeals, and that, under 7 U.S.C. § 18(e), such a petition would not be effective unless, in conformance with the statute, within 30 days of the date of the order he filed with the court "a bond

5

equal to double the amount of any reparation award."

On August 4, 2016, Word filed here a petition for review of the 2016 Order. He also filed a motion for leave to appeal *in forma pauperis* (IFP). However, he failed to file an appeal bond with the Clerk of Court or elsewhere.

On September 1, 2016, according to the Stidhams, Word owed them a total of approximately $128,900, including still accumulating interest, costs, and attorneys' fees. The Stidhams collected a partial payment of $75,211.75 from a 2016 disbursement of funds by the receiver of a limited liability company partly owned by Word, in accordance with a court order obtained in a state court proceeding initiated by the Stidhams. But even after the disbursement, the Stidhams contend that Word still owed them over $50,000 on account of the ever-increasing costs, fees, and interest arising from the 1992 Order.[3]

On October 11, 2016, both Respondents filed a motion to dismiss Word's current petition for review for lack of jurisdiction because Word has never posted any bond as required by 7 U.S.C. § 18(e), the congressional directive governing judicial review of CFTC reparation orders. Word responded to the motion pro se, and we appointed Word pro bono counsel to further elucidate the jurisdictional issues.

---

[3]    Though the record is unclear as to exactly what is owed today, it is undisputed that Word remains indebted to the Stidhams for some significant amount.

II

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by" Congress or the Constitution. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir. Feb. 1981).[4]  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (citations omitted).

Our jurisdiction over a direct petition for review of a CFTC order, as with any agency order, must be founded on some statutory grant of authority from Congress. *See* 5 U.S.C. § 703; *Sch. Bd. of Broward Cty. v. Dep't of Health, Educ. & Welfare*, 475 F.2d 1117, 1119 (5th Cir. 1973).

Under § 18(e), a party may obtain judicial review of any CFTC order by filing a petition for review of the order in the appropriate court of appeals. *See* 7 U.S.C. § 18(e) ("Any order of the Commission entered hereunder shall be reviewable on petition of any party aggrieved thereby, by the United States Court of Appeals for any circuit in which a hearing was held . . . ."); *see also Clayton Brokerage Co. of St. Louis v. Commodity Futures Trading Comm'n*, 794 F.2d 573,

---

[4]    Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981 are binding on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

575 (11th Cir. 1986) (noting that we have jurisdiction to review the CFTC's order

awarding reparations under § 18(e)).  Section 18(e) further provides, however, that

> [s]uch appeal ***shall not be effective*** unless within 30 days from and after
> the date of the reparation order the appellant also files with the clerk of
> the court a bond in double the amount of the reparation awarded against
> the appellant conditioned upon the payment of the judgment entered by
> the court, plus interest and costs, including a reasonable attorney's fee
> for the appellee, if the appellee shall prevail.

(emphasis added).

Respondents contend that this bond requirement is jurisdictional, and the

petition for review must therefore be dismissed because Word failed to post the

bond.  This is an issue of first impression in this Circuit.  We agree with

Respondents that the bond requirement is jurisdictional.

Whether a statutory requirement is jurisdictional or merely a claims-

processing rule has been the source of much litigation before the Supreme Court in

the past several years.  *See, e.g.*, *United States v. Kwai Fun Wong*, 135 S. Ct. 1625,

1632 (2015); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434–36

(2011).  A requirement is jurisdictional if Congress "clearly states that a threshold

limitation on a statute's scope shall count as jurisdictional."  *Arbaugh v. Y & H*

*Corp.*, 546 U.S. 500, 515 (2006); *see also Kwai Fun Wong*, 135 S. Ct. at 1632.

When analyzing whether a statutory requirement is jurisdictional, we must focus

on the "text, context, and relevant historical treatment" of the statute.  *Reed*

*Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) (citing *Zipes v. Trans World*

8

*Airlines, Inc.*, 455 U.S. 385, 393–95 (1982)).

We begin our analysis with the statutory language. *See Mansell v. Mansell*, 490 U.S. 581, 588 (1989) ("Where, as here, the question is one of statutory construction, we begin with the language of the statute."). And the "shall not be effective" language in § 18(e) is a strong indication that the bond was intended to be jurisdictional. *See Chicago Commodities, Inc. v. Commodities Futures Trading Comm'n*, 811 F.2d 1262, 1263 (9th Cir. 1987) ("The plain meaning of the language in [§ 18(e)] supports our conclusion that the bond requirement is jurisdictional."). Moreover, as the Ninth Circuit and the D.C. Circuit have noted, § 18(e)'s bond requirement text is identical to that of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499g(c), *Chicago Commodities*, 811 F.2d at 1263; *Kessenich v. Commodity Futures Trading Comm'n*, 684 F.2d 88, 91 (D.C. Cir. 1982), and PACA's "shall not be effective" language has been unanimously interpreted as jurisdictional, *see, e.g.*, *Alphas Co. v. William H. Kopke, Jr., Inc.*, 708 F.3d 33, 38 (1st Cir. 2013); *G. & T. Terminal Packaging Co. v. Hawman*, 870 F.2d 77, 79 (2d Cir. 1989).

In the context of § 18, Congress employed the less strict word "may" when creating a statute of limitations for reparations complaints. *See* 7 U.S.C. § 18(a) (providing that any person "*may*, at any time within two years after the cause of action accrues, apply to the Commission for an order . . .") (emphasis added). That

9

choice indicates further that the bond requirement was intended to be mandatory and jurisdictional as opposed to a claims-processing rule.

Additionally, the legislative history of PACA, on which § 18(e) is based, makes even clearer that Congress intended the bond requirement in § 18(e) to be jurisdictional in nature. *See* H.R. Rep. No. 87-1546, at 7 (1962), *as reprinted in* 1962 U.S.C.C.A.N. 2749, 2754; *see also Chicago Commodities*, 811 F.2d at 1263 ("[The Act] was modeled after PACA. The bond requirements in the two statutes are identical. The legislative history of PACA unequivocally indicates that the bond requirement is jurisdictional."). The relevant House Report on PACA states that § 499g(c) was amended to "make it clear that an appeal from a reparation award of the Secretary shall not be effective as an appeal, *and therefore not a matter within the jurisdiction* of the" federal courts, "unless the required bond is filed with the court within 30 days from and after" the appealed order. *See* H.R. Rep. No. 87-1546, at 7 (1962) (emphasis added).

Taken together, the statutory text, context, and legislative history are a "clear statement" of congressional intent that the bond requirement in § 18(e) is jurisdictional. *See Arbaugh*, 546 U.S. at 515; *Kwai Fun Wong*, 135 S. Ct. at 1632 (absent a "clear statement" from Congress, statutory requirement is a claims-processing rule rather than jurisdictional).

Indeed, both circuits addressing this question in published opinions over the

10

years have agreed that § 18(e)'s bond requirement is jurisdictional.  *See Chicago Commodities*, 811 F.2d at 1263; *Kessenich*, 684 F.2d at 93; *Saharoff v. Stone*, 638 F.2d 90, 91–92 (9th Cir. 1980).  Therefore, the "historical treatment" of § 18(e) also indicates that the bond requirement is jurisdictional.  Here, then, we have both a clear statement from Congress and historical precedent all pointing to the jurisdictional nature of the bond requirement.  *See Muchnick*, 559 U.S. at 166.  We now join our sister circuits and hold that § 18(e)'s bond requirement is jurisdictional.

Yet, Word persists.  He reasons that, even assuming § 18(e)'s bond requirement is normally jurisdictional, the 2016 Order does not itself contain a reparation award that can be doubled, so he does not need to post any bond.  He argues that "the statute requires a party seeking to appeal '[a]ny order of the Commission' to post, 'within 30 days from and after the date of *the reparation order* . . . a bond in double the amount of *the reparation* awarded.'  7 U.S.C. § 18(e) (emphasis added).  The italicized phrases must be referring to the same order."  We are not persuaded for at least three reasons.

First, Word's quote is incomplete.  The statute says, "within 30 days from and after the date of the reparation order" the appellant must post "a bond in double the amount of the reparation awarded <u>against the appellant</u>."  7 U.S.C. § 18(e) (emphasis added).  That phrase "awarded against the appellant," instead of

"awarded in the reparation order," demonstrates a purposeful decision by Congress not to limit the relevant award for bond purposes to that found in the order being appealed.  "[A]gainst the appellant" is broader than that, and we think a common sense reading of the statute shows that the bond amount can come from any relevant reparation award, including one granted earlier in petitioner's case.

Second, the bond requirement is jurisdictional.  Congress would not create a jurisdictional requirement that only applies some of the time but not in the situation present here for motions to set aside or seeking reconsideration without expressly stating it.  To the extent there is ambiguity in the statutory language, Congress expressly declared with respect to PACA's appeal bond that federal courts lack jurisdiction to review without the posting of a bond.  *See* H.R. Rep. No. 87-1546, at 7 (1962).  The legislative history never suggests a scenario where an appellant need not post a bond (*i.e.*, saying, "if any").  *See id*.  This lack of legislative exemption weighs against Word's preferred reading.

Third, Word's interpretation would lead to absurd results thwarting Congress' intent.  *Lewis v. Barnhart*, 285 F.3d 1329, 1332 (11th Cir. 2002) (courts will interpret statutes to avoid "absurdity of results" (internal quotation marks omitted)).  All a petitioner would have to do is simply not appeal the original order requiring him to pay, refuse to pay, move to set aside the original order later, and, if he loses that motion, appeal the denial, never having to post a bond while

12

continuing to delay payment.  That would encourage the very dilatory tactics and mounting of expenses in collection of the reparation awarded that Congress intended to discourage by imposing the statutory bond requirement.  The more logical reading is that the bond required must be twice the size of at least the reparation order originally entered "against the [petitioner]" before the CFTC. 7 U.S.C. § 18(e).

Word raises two additional, related arguments.  First, the Stidhams have already received approximately $75,000 from Word via a receivership, which is more than "double the amount of the reparation awarded against" Word.  *Id*. Therefore, under the *Saharoff* court's reasoning, no bond is needed to secure payment of the reparation award, plus interest, costs and attorneys' fees.  *See* 638 F.2d at 92–93.  Second, Word argues that since the Stidhams have received some payment towards the reparation award, and Respondents have not identified what amount of a bond Word should have posted with the Clerk here, that amount must be zero.

The first argument is not persuasive because it is undisputed that Word still owes the Stidhams tens of thousands of dollars arising from the reparation awarded (and compounded interest) in the original 1992 Order—for which Word needed to post a bond as a basis for our statutory jurisdiction.  The second question of how much the bond should be here is an interesting and difficult one, but one we need

13

not reach.  Had Word posted a bond here to satisfy § 18(e) *in any amount*, and he was before us arguing the size should not be double the original amount of the award in the 1992 Order, we might have been persuaded, as our colleagues were in *Saharoff*, to require a smaller bond.  638 F.2d at 91, 93.  Indeed, we granted Word IFP status in this case, and he might have had a good Equal Protection Clause argument that a bond exceeding $35,023.82 (double the 1992 award) was nonetheless prohibitive and improper.  But his failure to post any appeal bond in the face of § 18(e)'s mandatory and jurisdictional requirement drowns his arguments before they can swim.

We dismiss Word's petition for review for want of jurisdiction.  We need go no further to discuss the merits of this appeal.

### III

The Motion is GRANTED and Word's petition for review is DISMISSED for want of jurisdiction.

**<u>DISMISSED.</u>**